1

2

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

3

4

5

6

7

8

9

UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, SONY MUSIC ENTERTAINMENT, ARISTA MUSIC, ARISTA RECORDS, LLC, ATLANTIC RECORDING CORPORATION, RHINO ENTERTAINMENT COMPANY, WARNER MUSIC INC., WARNER MUSIC INTERNATIONAL SERVICES LIMITED, WARNER RECORDS LLC, and WARNER RECORDS/SIRE VENTURES LLC,

10

          Movant,

11

vs.

12

AH CAPITAL MANAGEMENT, LLC

13

          Third Party.

14

Case No.: 3:25-mc-80194

[RELATED TO CASE NO. 1:24-CV-04777 PENDING IN THE SOUTHERN DISTRICT OF NEW YORK]

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL AH CAPITAL MANAGEMENT, LLC'S COMPLIANCE WITH A NON-PARTY SUBPOENA**

15

16

17

18

19

20

UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, SONY MUSIC ENTERTAINMENT, ARISTA MUSIC, ARISTA RECORDS, LLC, ATLANTIC RECORDING CORPORATION, RHINO ENTERTAINMENT COMPANY, WARNER MUSIC INC., WARNER MUSIC INTERNATIONAL SERVICES LIMITED, WARNER RECORDS LLC, and WARNER RECORDS/SIRE VENTURES LLC,

21

          Plaintiffs,

22

vs.

23

24

UNCHARTED LABS, INC. d/b/a Udio.com, and John Does 1-50

          Defendants.

25

26

27

28

## NOTICE OF MOTION AND MOTION TO COMPEL

Please take notice that Plaintiffs UMG Recordings, Inc. ("UMG") and Capitol Records, LLC ("Capitol," and collectively with UMG, "Universal"); Sony Music Entertainment ("SME"), Arista Music, and Arista Records LLC ("Arista Records," and collectively with Arista Music and SME, "Sony"); Atlantic Recording Corporation ("Atlantic"), Rhino Entertainment Company ("Rhino"), Warner Music Inc. ("WMI"), Warner Music International Services Limited ("WMISL"), Warner Records Inc., Warner Records LLC, and Warner Records/SIRE Ventures LLC ("WR/SIRE," and collectively with Atlantic, Rhino, WMI, WMISL, Warner Records Inc., and Warner Records LLC, "Warner," and together with Universal and Sony, "Plaintiffs"), will and hereby do move, pursuant to Rules 34 and 45 of the Federal Rules of Civil Procedure for an Order Compelling Compliance with the Subpoena served on AH Capital Management LLC ("a16z"). This motion is brought pursuant to Rules 34 and 45 of the Federal Rules of Civil Procedure on the grounds that a16z has failed to provide relevant, non-privileged documents responsive to the subpoena served on it.

This Motion is based on this Notice of Motion and Motion to Compel a16z's Compliance with the Subpoena, the attached Memorandum of Law and Points of Authorities, the Declaration of Mariah N. Rivera and accompanying exhibits, all pleadings and papers on file herein, and upon such further oral and documentary evidence as may be presented at or before the hearing on this Motion.

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37-1</u>

Pursuant to Local Rule 37-1, Plaintiffs hereby certify that their counsel has corresponded with counsel for a16z both by teleconference and in writing regarding the disputed issues, including three formal meet and confer calls to address these disputed issues on December 3, 2024, May 8, 2025, and May 14, 2025 and that such attempts to resolve these issues were unsuccessful. See Declaration of Mariah N. Rivera ("Rivera Decl.") at ¶ 2.

## MEMORANDUM OF LAW AND POINTS OF AUTHORITIES

Pursuant to Rules 34(c) and 45(d)(2)(B)(i) of the Federal Rules of Civil Procedure, Plaintiffs respectfully move to compel non-party AH Capital Management, LLC ("a16z") to comply with a subpoena issued pursuant to Rule 45 (the "Subpoena"), which seeks the production of documents relevant to central issues in this copyright infringement action.

## I.    INTRODUCTION

This motion seeks a narrow and targeted set of documents from a16z, a sophisticated venture capital firm that is one of the lead investors in Defendant Uncharted Labs, Inc. ("Udio"), an AI-powered music generation service.  These documents concern the due diligence a16z undoubtedly performed before investing millions of dollars into a company whose entire business model is predicated on the mass copying of copyrighted sound recordings, as well as the advisory role a16z served after investing in Udio.  As a16z itself acknowledged in a public submission to the U.S. Copyright Office prior to investing in Udio, generative AI models like Udio's can exist only by training on "an almost unimaginably massive amount of content, much of which … will be subject to copyright."  *See* Ex. A at 5.  a16z warned that "imposing the cost of actual or potential copyright liability on the creators of AI models will either kill or significantly hamper their development."  *Id.* at 8.

Having publicly recognized this existential copyright risk, a16z invested in and advised Udio anyway.  The documents reflecting what Udio discussed with a16z regarding that risk, how that was incorporated into a16z's internal analyses of the investment opportunity, and how a16z continued to advise Udio following this substantial investment, are directly relevant to Udio's willfulness and its asserted fair use defense.  Despite Plaintiffs' extensive efforts to meet and confer, a16z has only agreed to produce materials it exchanged with Udio, but only if Plaintiffs agreed to forego motion practice.  Since a16z's own internal communications and analyses concerning Udio are also highly relevant to this case, Plaintiffs could not agree to a condition that would allow a16z to shield unique documents that are critical to this case.  Accordingly, a16z has heretofore not agreed to produce any documents at all in response to the subpoena.  Because the requested materials are highly relevant and the requests are proportional to the needs of the case, the Court should compel their production.

## II.    BACKGROUND

Plaintiffs are record companies that collectively own or exclusively control copyrights in many of the most historically important and commercially valuable sound recordings in the world. Udio copied Plaintiffs' sound recordings on a massive scale to train the AI models that underpin its commercial AI music generation service. *See* Answer at 8. a16z is a venture capital firm, Udio's lead investor, and one of Udio's trusted advisors.[1] On June 24, 2024, Plaintiffs filed the underlying action against Udio in the United States District Court for the Southern District of New York, Case No. 24-cv-04777. Plaintiffs assert claims for willful infringement based upon Udio's mass copying of their copyrighted sound recordings to train its AI service. Udio's principal defense is fair use.

On October 16, 2024, Plaintiffs served a subpoena duces tecum on a16z, seeking documents related to its investment in Udio, including its evaluation of the associated copyright risks. Ex. B. On November 6, 2024, a16z served its responses and objections to the subpoena. Ex. C. After months of conferral, including substantial narrowing of the requests by Plaintiffs, a16z offered to produce certain communications it had *with* Udio, but only if Plaintiffs withdrew their requests for a16z's internal communications and analyses regarding Udio's business, the copyrighted works that comprise its training data, or the associated legal risks. Plaintiffs declined, and a16z has therefore refused to produce any documents at all in response to the subpoena. At no point during the parties' conferrals did a16z identify any specific burden involved in collecting and producing the requested documents.

## III.    LEGAL STANDARD

Under the Federal Rules, parties may obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). This standard is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."

---

[1] *See* Press Release, Former Google Deepmind Researchers Assemble Luminaries Across Music And Tech To Launch Udio, A New AI-Powered App That Allows Anyone To Create Extraordinary Music In An Instant, PR Newswire (Apr. 10, 2024), *available at* https://web.archive.org /web/20250114212137/https://www.prnewswire.com/news-releases/former-google-deepmind-researchers-assemble-luminaries-across-music-and-tech-to-launch-udio-a-new-ai-powered-app-that-allows-anyone-to-create-extraordinary-music-in-an-instant-302113166.html.

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). A non-party may be compelled to produce any materials falling within this broad scope. Fed. R. Civ. P. 34(c), 45; *see Vysata v. Menowitz*, 2019 WL 2871145, at *1 (C.D. Cal. May 30, 2019) ("Subpoenas under Rule 45 are subject to the same scope of discovery defined in Rule 26(b)."). A motion to compel a non-party's compliance with a subpoena is properly filed in the district in which compliance is required. Fed. R. Civ. P. 45(d)(2)(B)(i).

**IV.    ARGUMENT**

Plaintiffs move to compel a16z to produce materials responsive to the following narrowed requests:

> **Amended Document Request No. 1**: All documents related to (i) Udio and Plaintiffs' sound recordings, (ii) Udio's training data, (iii) copyright liability associated with Udio, (iv) Udio's business risks, (v) the market for Udio's AI service and/or AI generated outputs, (vi) Udio's actual or potential impact on the music industry, and/or (vii) Udio's efforts or failure to license its training data.
>
> **Amended Document Request No. 2**: All communications related to Udio, including but not limited to any communications with Udio, regarding (i) Plaintiffs' sound recordings, (ii) Udio's training data, (iii) copyright law, (iv) business risks, (v) the market for Udio's AI service and/or outputs, (vi) the impact on the music industry, and/or (vii) Udio's efforts or failure to license its training data.

These requests seek documents that are highly relevant to Udio's willfulness and its fair use defense, and they are proportional to the needs of the case.

**A.    The Requested Documents Are Highly Relevant to Central Issues in This Case**

*1.    The Requested Documents Are Relevant to Udio's Willful Infringement*

A finding of willful infringement allows for enhanced statutory damages of up to $150,000 per work. 17 U.S.C. § 504(c)(1)-(2). Willfulness can be established by showing the defendant "was actually aware of the infringing activity" or acted with "reckless disregard for, or willful blindness to, the copyright holder's rights." *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017).

What Udio told its lead investor about its use of copyrighted sound recordings for use as training data and the associated legal risks is directly probative of Udio's state of mind. a16z's internal analyses, notes, and reports concerning its investment are likely to contain the most candid

assessment of those issues.  As another court in this District found when compelling discovery from non-party investors in a copyright case, such internal documents are relevant to "defendants' intent and knowledge," which "may not be clear from documents produced by defendants." *Viacom Intern., Inc. v. YouTube, Inc.*, 2008 WL 3876142, at *4 (N.D. Cal. Aug. 18, 2008).  This is because investors "may have obtained information regarding defendants' intent and knowledge through oral communications, which [they] then incorporated into their internal analyses." *Id.*  The same is true here—a16z's internal documents are a unique and critical source of evidence regarding Udio's willfulness.

In addition, a16z's analyses leading to its decision to invest in Udio are relevant insofar as they relate to Udio's valuation and anticipated profits, including the extent to which those are dependent upon the mass copying of Plaintiffs' copyrighted sound recordings, and therefore bear on Plaintiffs' actual damages.  Courts considering similar requests directed at third-party investors in the context of patents have found such valuations and analyses relevant to damages.  *See Intel Corp. v. Prot. Cap. LLC*, 2013 WL 12313348, at *3 (S.D. Cal. Oct. 2, 2013) (finding request from a third-party investor for information regarding "analyses leading to its decision to invest" to be "relevant because it relate[d] to the valuation of the patents," which in turn relates to "damages . . . in the underlying patent case").  This logic equally applies here.

               2.     *The Requested Documents Are Relevant to Udio's Fair Use Defense*

The requested documents are also relevant to at least two of the four fair use factors.  *See* 17 U.S.C. § 107.

First, the documents bear on the first fair use factor, namely "the purpose and character of the use, including whether such use is of a commercial nature."  17 U.S.C. § 107(1).  This factor weighs against fair use where the defendant "stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row Publishers, Inc. v. Nation Enters*., 471 U.S. 539, 562 (1985) (citation omitted).  Where a secondary use is commercial and serves the same essential purpose as the original, the first factor is "likely to weigh against fair use." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 532-33 (2023).  Documents showing how Udio pitched its business to a16z, and a16z's own analysis of Udio's commercial potential, will

1  reveal the extent to which Udio's business plan was built on exploiting Plaintiffs' copyrighted works

2  to create a commercial AI product that outputs audio files that compete with the works on which it

3  was trained.

4      Second, the documents are relevant to the fourth fair use factor, namely "the effect of the use

5  upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107(4).  This factor,

6  which is "the single most important element of fair use," *Harper & Row Publishers*, 471 U.S. at 566,

7  considers whether the defendant's use usurps the market for the original or for potential derivative

8  markets, *see Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1523 (9th Cir. 1992), *as amended*

9  (Jan. 6, 1993).  This includes, but is not limited to, the potential dilutive effect that outputs from

10  Udio's AI music generation service will have on the market for copyrighted sound recordings, as

11  well as the market for licensing copyrighted works for AI training.  *See Kadrey v. Meta Platforms,*

12  *Inc.*, — F. Supp. 3d —, 2025 WL 1752484, at *2 (N.D. Cal. June 25, 2025); *see also Thomson*

13  *Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*, 765 F. Supp. 3d 382, 400 (D. Del. 2025).  a16z's

14  analysis of Udio's impact on the music industry and the value proposition of avoiding licensing fees

15  is direct evidence of market impact.

16      **B.    The Requests Are Proportional to the Needs of the Case**

17      The requests are also proportional to the needs of the litigation.  The requests are narrowly

18  tailored to seven specific topics directly concerning the aspects of Udio's conduct that are most

19  relevant to the case.  Plaintiffs are not seeking materials regarding a16z's overall business, its

20  investments in any other companies, or its decision-making more broadly; the requests are instead

21  tailored to what is necessary to prove willfulness and defeat Udio's central fair use defense.  a16z

22  has not identified any specific burden associated with collecting and producing the requested

23  documents.

24      a16z's objection that some of these documents may overlap with Udio's production is

25  meritless.  "[T]here is no general rule that plaintiffs cannot seek nonparty discovery of documents

26  likely to be in defendants' possession."  *Viacom Intern.*, 2008 WL 3876142, at *3.  a16z, for instance,

27  may possess documents and communications that Udio failed to preserve or produce.  *See Amphenol*

28  *Corp. v. Fractus, S.A.*, 2019 WL 2521300, at *11 (S.D.N.Y. June 19, 2019) (plaintiffs are entitled to

1   seek discovery from non-party to "test the accuracy and completeness of the defendants' discovery

2   responses").  More importantly, a16z's own internal analyses and communications, including those

3   that reflect or incorporate information from oral discussions with Udio, are unique and would not be

4   in Udio's possession.

5   **V.      CONCLUSION**

6          Plaintiffs seek the production of highly relevant evidence from a16z, Udio's chief investor

7   and trusted advisor.  Plaintiffs are entitled to discover from a16z what Udio shared or learned about

8   the risks associated with its broadscale copying of Plaintiffs' copyrighted sound recordings and

9   information reflecting the effect this conduct will have on the market for Plaintiffs' copyrighted

10  sound recordings.  For the foregoing reasons, Plaintiffs respectfully request that the Court grant their

11  motion and compel a16z to produce all non-privileged documents responsive to Plaintiffs' narrowed

12  requests.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:    July 15, 2025

        Los Angeles, California

By: _____

Moez M. Kaba
Mariah N. Rivera*
Alexander R. Perry*
Samuel Givertz*
**HUESTON HENNIGAN LLP**
1 Little West 12th Street
New York, New York 10014
Telephone: (646) 930-4046
Facsimile: (888) 775-0898
mkaba@hueston.com
mrivera@hueston.com
aperry@hueston.com
sgivertz@hueston.com

Robert N. Klieger
Rajan S. Trehan
**HUESTON HENNIGAN LLP**
523 West 6th Street, Suite 400
Los Angeles, California 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898
rklieger@hueston.com
rtrehan@hueston.com

*Counsel for Plaintiffs*

*\*Pending admission pro hac vice*