DOUGLAS A. WINTHROP (Bar No. 183532)
Douglas.Winthrop@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone:    (415) 471-3100
Facsimile:     (415) 471-3400

NATE KING* (Bar No. 361167)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Nate.King@arnoldporter.com
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone:    (213) 243-4000
Facsimile:     (213) 243-4199
*Application for admission forthcoming

*Attorneys for Nonparty Respondent AH Capital Management, LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, SONY MUSIC ENTERTAINMENT, ARISTA MUSIC, ARISTA RECORDS, LLC, ATLANTIC RECORDING CORPORATION, RHINO ENTERTAINMENT COMPANY, WARNER MUSIC INC., WARNER MUSIC INTERNATIONAL SERVICES LIMITED, WARNER RECORDS LLC, and WARNER RECORDS/SIRE VENTURES LLC, <br><br> Movant, <br><br> vs. <br><br> AH CAPITAL MANAGEMENT, LLC, <br><br> Third Party. | Case No. 4:25-mc-80194-KAW <br><br> [RELATED TO CASE NO. 1-24-CV-04777 PENDING IN THE SOUTHERN DISTRICT OF NEW YORK] <br><br> **RESPONDENT AH CAPITAL MANAGEMENT, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH A NON-PARTY SUBPOENA** <br><br> Date: August 21, 2025 <br> Time: 1:30 p.m. <br> Place: Courtroom TBD <br><br> **Judge: Honorable Kandis A. Westmore** |

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff record companies are suing Defendant Uncharted Labs, Inc., known as "Udio," for copyright infringement. Nonparty AH Capital Management, LLC ("a16z") is a Bay Area venture capital company that has invested in Udio.[1] Plaintiffs contend that its document requests to a16z are relevant to its claim of willful copyright infringement because they will shed light on Udio's state of mind. But a16z agreed that it would produce to Plaintiffs all communications between, and documents shared by, Udio and a16z—documents that would bear directly on Udio's state of mind. Plaintiffs, however, demand more. By this motion, Plaintiffs seek strictly *internal* a16z documents that having nothing to do with Udio's state of mind, but, instead, are aimed at *a16z's* analysis and thinking about a wide range of topics from "Plaintiffs' sound recordings" to "the market for Udio's AI service and/or AI generated outputs" to "Udio's actual or potential impact on the music industry." Motion at 3 (quoting Amended Document Request No. 1), Dkt. No. 1. a16z's views on these topics have zero relevance to this case. Plaintiffs also contend that a16z's analysis of Udio's business is relevant to Udio's valuation and anticipated profits. But Plaintiffs have made no showing that a16z has any unique information about Udio's finances or business plans that Plaintiffs and their experts cannot obtain through discovery of Udio or from independent sources.

a16z recognizes that, like anyone else, it has an obligation to provide information that is relevant to a federal law suit. In agreeing to provide Plaintiffs with communications with, and documents shared by, a16z and Udio, a16 has met its obligations under Federal Rule of Civil Procedure 45. But Plaintiffs have an obligation too; theirs is to avoid imposing undue burden on a nonparty. Even with respect to Plaintiffs' demand for communications between Udio and a16z, Plaintiffs have failed to satisfy this obligation as they make no showing whatsoever that all such documents cannot be readily obtained *from Udio*, the defendant in this case.

---

[1] *See* Press Release, Former Google Deepmind Researchers Assemble Luminaries Across Music And Tech To Launch Udio, A New AI-Powered App That Allows Anyone To Create Extraordinary Music In An Instant, PR Newswire (Apr. 10, 2024), *available at* https://www.prnewswire.com/news-releases/former-google-deepmind-researchers-assemble-luminaries-across-music-and-tech-to-launch-udio-a-new-ai-powered-app-that-allows-anyone-to-create-extraordinary-music-in-an-instant-302113166.html.

The same is true with Plaintiffs' requests for wide-ranging discovery into a16z's analysis about such topics as artificial intelligence, the music industry, and the current debate regarding copyright and fair use. Unfortunately, it is not an uncommon tack for parties in litigation with venture-backed companies to argue that, because a venture capital firm analyzes companies and markets, its internal, confidential decision-making, assessments and analyses are somehow relevant to the plaintiffs' litigation claims. But courts in this district have rejected precisely this kind of unwarranted invasion into the investment decision-making of nonparty venture capital firms and attempts to bypass party discovery. *E.g.*, *Sci. Applications & Rsch. Assocs. (SARA), Inc. v. Zipline Int'l, Inc.*, 2024 WL 3925704 (N.D. Cal. 2024) (Corley, J.); *Visto Corp. v. Smartner Info. Sys., Ltd.*, 2007 WL 218771 (N.D. Cal. 2007) (Seeborg, M.J.). a16z respectfully submits that this Court should do the same and deny Plaintiffs' motion to compel.

## II. BACKGROUND

Plaintiffs served their subpoena on a16z on October 16, 2024. *See* Dkt. No. 1-3. It was breathtakingly broad and improper. *See, e.g.*, Dkt. No. 1-3, Request No. 8, Definition No. 2 (requesting "all documents and communications related to" "any artificial intelligence-powered service"), Request No. 9 ("all documents and communications related to Plaintiffs"), Request No. 10, Definition No. 2 ("all documents and communications relating to the licensing of sound recordings for" "any artificial intelligence-powered service"), Request No. 13, Definition No. 2 ("all documents and communications relating to the application, actual or potential, of United States intellectual property laws or regulations, including but not limited to the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, the Music Modernization Act, 17 U.S.C. §§ 1401, *et seq.*, and the United States Copyright Office, to" "any artificial intelligence-powered service."). a16z objected because the subpoena sought documents not relevant to the claims or defenses in the action, (ii) called for the production of confidential and proprietary information of a nonparty, and (iii) made demands on a nonparty that were not proportionate to the needs of the case and, therefore, overbroad and unduly burdensome. *See* Dkt. No. 1-4.

Despite the overbreadth of Plaintiffs' requests, a16z engaged with Plaintiffs and offered to provide the only documents arguably relevant to the underlying action—communications between

and documents shared by Udio and a16z. *See* Dkt. No. 1-1, ¶ 2; Motion at 1. Plaintiffs rejected a16z's offer and brought this motion instead.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 45 expressly provides that "[a] party . . . responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." F.R.C.P. 45(d)(1). Indeed, "[t]he Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Lemberg L. LLC v. Hussin*, 2016 WL 3231300, at *5 (N.D. Cal. 2016). "In general, there is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests." *Genus Lifesciences Inc. v. Lannett Co., Inc.*, 2019 WL 7313047, at *4 (N.D. Cal. 2019). *"*When the requesting party has not shown that it attempted to obtain documents from the opposing party in an action prior to seeking the documents from a non-party, a subpoena duces tecum places an undue burden on a non-party." *Id*. (cleaned up).

A court may limit discovery if "the discovery sought…can be obtained from some other source that is more convenient, less burdensome, or less expensive" or if "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b); Fed. R. Civ. P. 45(d). Discovery may also be limited to "protect third parties from harassment, inconvenience, or disclosure of confidential documents." *Dart Indus. Co. v. Westwood Chem. Co*., 649 F.2d 646, 649 (9th Cir. 1980). "Thus, a court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Pate v. Pac. Harbor Line, Inc*., 2023 WL 2629867, at *9 (C.D. Cal. 2023) (citation omitted). "[T]he information requested from a non-party should be narrowly drawn to meet specific needs for information." *Waymo LLC v. Uber Techs., Inc*., 2017 WL 2929439, at *3 (N.D. Cal. 2017) (cleaned up). And "[t]he party seeking to compel compliance with a subpoena bears the burden of establishing that its request seeks relevant information and thus falls within the appropriate scope of discovery." *Sacks Holdings, Inc. v. Vaidya*, 2024 WL 4730424, at *3 (N.D. Cal. 2024).

## IV. ARGUMENT

Plaintiffs fail to establish that the requested documents are relevant to the claims or defenses in the underlying litigation or that the requests are proportional to the needs of the case.

### A. The Requested Documents Are Not Relevant to Plaintiffs' Willfulness Contentions or Udio's Fair Use Defense.

Plaintiffs advance three conclusory arguments to attempt to establish relevance here. None has merit.

***First***, Plaintiffs contend that the requested documents are relevant to their copyright infringement contentions because, Plaintiffs assert, they may reflect on Udio's state of mind with regard to the possibility of future claims of copyright infringement. Motion at 3-4. But a16z's documents could only reflect Udio's state of mind to the extent Udio's views were ***communicated*** to a16z. This is precisely why a16z offered to provide Plaintiffs with communications between, and documents shared by, a16z and Udio.

Plaintiffs' assertion that a16z may nonetheless possess internal documents that reflect what has been communicated by Udio to a16z ***only*** through oral communications is pure speculation. Plaintiffs point to no documents, deposition testimony, or any factual basis whatsoever to validate that assertion. This Court should not impose premature, burdensome discovery on a nonparty on the basis of speculation that some internal documents ***might*** reflect the results of otherwise undocumented oral communications. *Gilmore v. Safe Box Logistics, Inc.*, 2023 WL 361081, at *3 (N.D. Cal. 2023) ("Relevance must be established with a concrete logical chain, as opposed to speculation, guesswork or hopes and wishes as to what the documents or information *might* reveal."); *Athalonz, LLC v. Under Armour, Inc.*, 2024 WL 628846, at *7 (N.D. Cal. 2024), *objections overruled*, 2024 WL 3508496 (N.D. Cal. 2024) (denying third-party subpoena when plaintiff had "ample time…to pursue depositions and document discovery from" defendant).

Further, Plaintiffs stated intent that they only seek documents reflecting Udio's state of mind is belied by the fact that they have not limited their requests—or this motion—to such documents. Plaintiffs' subpoena, even as narrowed for this motion, explicitly seeks documents that reflect ***a16z's*** internal opinions and assessments without regard to whether such information in any way

- 4 -

bears on Udio's state of mind. *See, e.g.*, Motion at 3 (quoting Amended Document Request No. 2) (seeking internal a16z documents concerning "copyright law," "business risks," and the impact of artificial intelligence on the music industry). Plaintiffs have not made and could not make an evidentiary showing that a16z's internal "opinions and analysis" of such broad categories are "independently relevant" to Udio's state of mind. *Visto Corp. v. Smartner Info. Sys., Ltd*., 2007 WL 218771, at *4 (N.D. Cal. 2007). Courts in this jurisdiction have rejected arguments that a third-party investor's independent assessments, opinions and analyses are relevant absent a "reason to believe that [the investor] possesses any such information not publicly available or available in the documents produced" in the underlying litigation. *Id.*; *Sci. Applications & Rsch. Assocs. (SARA), Inc. v. Zipline Int'l, Inc.*, 2024 WL 3925704, at *4 (N.D. Cal. 2024) ("SARA has not persuasively explained how the third-party investors' independent evaluations of Zipline…are relevant…").

Plaintiffs cite *Viacom Int'l Inc. v. YouTube, Inc.*, 2008 WL 3876142 (N.D. Cal. 2008), in support of their contention that internal a16z documents are somehow relevant here (Motion at 4), but *Viacom* does not stand for the broad proposition Plaintiffs suggest. There, plaintiffs, which had sued YouTube for copyright infringement, sought production of documents from three venture capital firms that were intimately involved in the sale of YouTube, had indemnified YouTube's buyer against claims of copyright infringement, and had had communications with **other** potential investors relating to YouTube. *Id.* at *1-2. Moreover, the Plaintiffs in *Viacom* had demonstrated that YouTube's record-keeping was poor and, therefore, the venture capital firms likely had documents that YouTube did not. *Id.* at *3-4. *See Arista Recs. LLC v. Lime Grp. LLC,* 2011 WL 781198, at *4 (S.D.N.Y. 2011) (noting that the court in *Viacom* "compelled production from a non-party *only after it found reason to believe that the documents sought from the non-party could not be obtained from the defendant."* (emphasis in original)). In "the circumstances of this case," Judge Illston held, it was "appropriate to require document production from third parties." *Viacom*, at *3. There are no such circumstances here.

**Second**, Plaintiffs vaguely contend that a16z's projections of Udio's value and profits bear on Plaintiff's actual damages. Motion at 4. But Plaintiffs "never tie[] that argument to any damage theory." *Zipline Int'l,* 2024 WL 3925704, at *5. Actual damages in copyright actions are limited to

(i) the copyright owners'—here, Plaintiffs'—damages, or (ii) "any profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504(a), (b). Plaintiffs fail to explain how a third-party's financial *projections* are tied to their own, *actual* damages or Udio's *actual* profit. "[S]o long as [Plaintiffs have] the same underlying [financial] data as the investors—and there is nothing in the record to suggest [Plaintiffs do] not—[a16z's] projections are irrelevant." *Zipline Int'l,* 2024 WL 3925704, at *5; *accord Visto Corp*, 2007 WL 218771, at *4. Plaintiffs make no claim that they do not have the same underlying financial data or even that Udio did not produce relevant financial data. And, it is without question that Udio itself is the best source of information as to its financial status.[2]

*Third*, Plaintiffs make the bare assertions that the requested documents are relevant to (i) the nature of Udio's alleged use of the copyrighted works and (2) the "market impact" of the alleged use. Motion at 4-5. The court expressly rejected this argument in *Visto Corp.,* in which the moving party sought a venture capital firm's "documents [that it] may have produced ***internally****,* regarding its own analysis of [the patent holder in which it invested] and its ultimate decision to participate in the funding." *Id.* at *3 (emphasis in original). The moving party argued that the venture capital firm's *internal* opinions and analyses related to the issues of "commercial success" and "reasonable royalty" and therefore were relevant to the underlying litigation. *Id*. at *4. The court disagreed. It reasoned that the venture capital firm's own internal, independent assessments on those issues were not relevant to *actual* commercial success and the issue of an *actual* reasonably royalty of the patent in question. *Id*. ("what might be relevant is the *actual* 'commercial success' that [the patentee] has enjoyed (or not enjoyed), as well as the *actual* data on other factors that may be considered when calculating a 'reasonable royalty.' The documents [the moving party] is seeking conceivably reflect a venture capital firm's *opinions* about and *analysis* of such information." (emphasis in original)).

---

[2] Plaintiffs' reliance on *Intel Corp. v. Prot. Cap. LLC*, 2013 WL 12313348 (S.D. Cal. 2013) (Motion at 4), is misplaced. There, because of certain specific business transactions, the subpoena recipients had documents that were directly relevant to the value of the intellectual property ***being enforced*** and thus to the plaintiffs' damages, such as a reasonable royalty to practice the patented invention. But that theory of relevance has no bearing here; even Plaintiffs do not contend that a16z is some unique repository of information about the value of Plaintiffs' sound recordings. Rather, Plaintiffs want to know what a16z's view was of Udio's expected economic performance. As set out in the text, courts in this district have expressly rejected that rationale for investment-firm discovery.

Because there was "no reason to believe that [the venture capital firm] possesse[d] any such information not publicly available or available in the documents produced [in the underlying litigation], or that [the venture capital firm's] opinions and analysis [were] independently relevant," the court denied the motion to compel. *Id*.

So too here. Plaintiffs do not seek the ***actual*** nature and market impact of Udio's alleged copyright use (information readily available from Udio or public sources); rather, it seeks a16z's independent, internal assessment of those issues. But there is "nothing in the record to suggest" that a16z had data or documents not available from Udio or from public sources. *Id*. at *4. Further, Plaintiffs do not even attempt to show that a16z's internal opinions and analysis are "independently relevant" to Udio's ***actual*** use and market impact. *Id*. In sum, Plaintiffs' "bare assertion that the thought processes of [a16z's] analysts and the private conclusions they drew [with respect to fair use] are 'clearly relevant' does not make that so." *Id*.

### B.  The Document Requests Are Not Proportional to the Needs of the Case and Seek Trade Secret, Confidential, and Other Proprietary Information.

In addition to the lack of relevance of the documents Plaintiffs seek, the subpoena also places an undue burden on a16z and seeks protected, proprietary commercial information.

As an initial matter, Plaintiffs' requests violate the general rule that "there is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests." *Genus Lifesciences Inc. v. Lannett Co., Inc.*, 2019 WL 7313047, at *4 (N.D. Cal. 2019). For example, Plaintiffs already have access to Udio's training data. *See UMG Recordings, Inc. et al.* v. *Uncharted Labs, Inc. et al.*, Case No. 1:24-cv-04777-AKH (S.D.N.Y.), Dkt. No. 82 (Joint Stipulation and Order Regarding Training Data Inspection Protocol) (March 17, 2025); Motion at 3 (requesting "[a]ll documents related to…Udio's training data"). Other documents Plaintiffs seemingly seek should be readily—and more appropriately—obtainable from Udio. Motion at 3 ("Udio's efforts or failure to license its training data"), *id*. ("the market for Udio's AI service…."), at 4 ("Documents showing how Udio pitched its business to a16z"). In sum, Plaintiffs should be required to seek discovery from a "more convenient" source before burdening a nonparty a16z with a broad subpoena. Fed. R. Civ. P. 26(b)(2)(C)(i).

The two cases on which Plaintiffs rely to assert that a party is permitted to seek duplicative discovery (Motion at 5-6) are distinguishable. Again, in *Viacom*, the Court "compelled production from a non-party *only after it found reason to believe that the documents sought from the non-party could not be obtained from the defendant.*" *Arista Recs*, 2011 WL 781198, at *4; *Viacom*, 2008 WL 3876142, at *3. Similarly, the court in *Amphenol Corp. v. Fractus, S.A.*, 2019 WL 2521300, at *11 (S.D.N.Y. 2019), granted the motion to compel in part because the party represented that there were "numerous discrepancies between technical, sales and marketing documents produced by" the parties. *Id*. at *11. Here, in contrast, Plaintiffs make no claim that Udio has failed to preserve documents.

Contrary to Plaintiffs' suggestions (Motion at 5), the overly broad subpoena does indeed place an identifiable and specific undue burden on a16z. The document requests seek "*all* documents" and "*all* communications" related to seven broad categories of documents, and it seeks a16z documents beyond those related to its investment in Udio. Given the breadth of these requests, it is difficult to estimate the amount of time it would take for a16z to conduct a search for, to review and to produce responsive documents, but it undoubtedly would be in excess of 100 hours. Particularly given the lack of relevance of these documents to the underlying litigation and Plaintiffs' ability to obtain any ***relevant*** documents directly from Udio, the Court should find the subpoena places an undue burden on a16z.

Finally, because the subpoena seeks "trade secret or other confidential research, development, or commercial information," Plaintiffs must demonstrate "substantial need for the . . . material that cannot be otherwise met without undue hardship." Fed. R. Civ. P. 45(d)(3)(B), (C). *See also Tremblay v. OpenAI, Inc.*, 2025 WL 714108, at *2 (N.D. Cal. 2025) ("The determination of substantial need is particularly important in the context of enforcing a subpoena when discovery of trade secret or confidential commercial information is sought from non-parties."). a16z's analyses, decision-making processes, and evaluations of markets and potential investment targets are unique and proprietary. *See* 18 U.S.C. § 1839(3) (broadly defining "trade secret" under Defend Trade Secret Act). Due to the hyper-competitive nature of venture capital, and the businesses and markets in which a16z invests, a16z guards its internal analyses and decision-making closely. Yet,

Plaintiffs make zero showing that the information on which a16z has based its internal analyses is not available directly from Udio or publicly available sources. There is no justification for forcing a16z to turn over its internal, confidential and proprietary business information in this case.

## V. CONCLUSION

For the reasons given, the Court should deny Plaintiffs' motion to compel.

Dated: July 30, 2025                                  Respectfully submitted,

                                                      **ARNOLD & PORTER KAYE SCHOLER LLP**

                                                      By:  /s/ *Douglas A. Winthrop*
                                                           DOUGLAS A. WINTHROP

                                                      *Attorney for Nonparty Respondent AH Capital Management, LLC*