UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMG RECORDINGS, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNCHARTED LABS, INC. D/B/A UDIO.COM,<br><br>Defendant. | Case No. 25-mc-80194-KAW<br><br>**ORDER RE MOTION TO COMPEL**<br>Re: Dkt. No. 1 |

On July 15, 2025, Plaintiffs UMG Recordings, Inc., Capitol Records, LLC, Sony Music Entertainment, Arista Music, Arista Records LLC, Atlantic Recording Corporation, Rhino Entertainment Company, Warner Music Inc., Warner Music International Services Limited, Warner Records Inc., Warner Records LLC, and Warner Records/SIRE Ventures LLC filed a motion to compel compliance with a subpoena as to third-party AH Capital Management LLC ("a16z"). (Pls.' Mot. to Compel, Dkt. No. 1.) The Court deems the matter suitable for disposition without a hearing, and VACATES the September 18, 2025 hearing pursuant to Civil Local Rule 7-1(b). Having considered the filings and the relevant legal authorities, the Court GRANTS Plaintiffs' motion to compel.

### I. BACKGROUND

Plaintiffs are record companies who have brought suit against Defendant Uncharted Labs, Inc. ("Udio") for copyright infringement. (Pls.' Mot. to Compel at 2; a16z Opp'n at 1, Dkt. No. 13.) Plaintiffs allege that Udio copied their copyrighted sound recordings to train the AI models that underpin Udio's commercial AI music generation service. (Pls.' Mot. to Compel at 2.)

Plaintiffs now seek documents from a16z, a Bay Area venture capital firm that has invested in Udio. (Pls.' Mot. to Compel at 2; a16z Opp'n at 1.) Plaintiffs seek documents and

communications related to:

> (i) Udio and Plaintiffs' sound recordings, (ii) Udio's training data, (iii) copyright liability associated with Udio, (iv) Udio's business risks, (v) the market for Udio's AI service and/or AI generated outputs, (vi) Udio's actual or potential impact on the music industry, and/or (vii) Udio's efforts or failures to license its training data.

(Pls.' Mot. to Compel at 3.)

On July 30, 2025, a16z filed an opposition. On August 6, 2025, Plaintiffs filed their reply. (Pls.' Opp'n, Dkt. No. 16.) On August 21, 2025, a16z filed a sur-reply. (a16z Sur-Reply, Dkt. No. 23.)[1]

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena. "The scope of discovery that can be requested through a subpoena under Rule 45 is the same as the scope under Rule 26(b)." *Fujikura Ltd. v. Finisar Corp.*, Case No. 15-mc-80110-HRL (JSC), 2015 U.S. Dist. LEXIS 135871, at *8 (N.D. Cal. May 14, 2015). Rule 26(b), in turn, allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." "Underlying the protections of Rule 45," however, "is the recognition that 'the word non-party serves as a constant reminder of the reasons for the limitations that characterize third-party discovery. Thus, a court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006).

## III.   DISCUSSION

### A.   Relevance

In the instant case, Plaintiffs seek discovery from a16z on the grounds that such discovery is relevant to: (1) whether Udio's infringement was willful, (2) damages, and (3) Udio's fair use

---

[1] On August 5, 2025, the Court issued an order regarding whether the subpoena was valid due to the lack of a physical place of compliance, which in turn affected whether the Court had jurisdiction over the matter. (Dkt. No. 14.) On August 17, 2025, the parties filed a stipulation stating that Plaintiffs had served an amended subpoena that included a physical place of compliance within the Northern District of California. (Dkt. No. 17.)

1  defense. (Pls.' Mot. to Compel at 3-4.)

2  With respect to willfulness, the primary question is whether a16z's internal documents are relevant to *Udio's* state of mind. (Pls.' Mot. to Compel at 3-4; a16z Opp'n at 4.) In arguing relevance, Plaintiffs assert that there could be information in the internal documents that were either communicated to or based on oral communications from Udio, such that a16z would be the only source of such evidence. (Pls.' Mot. to Compel at 4.) a16z, in turn, casts doubt as to whether there are any such oral communications that would not be otherwise reflected in documents already possessed by Udio. (a16z Sur-Reply at 2.)

"[I]n appropriate circumstances, production from a third party will be compelled in the face of an argument that the 'same' documents could be obtained from a party, because there is reason to believe that the files of the third party may contain different versions of documents, additional material, or perhaps, significant omissions." *Visto Corp. v. Smartner Info. Sys.*, Case No. 06-80339 MISC RMW (RS), Case No. 06-80352 MISC RMW (RS), 2007 U.S. Dist. LEXIS 8481, at *9 (N.D. Cal. Jan. 29, 2007). In the case of venture capital firms, courts have declined to require discovery of internal analyses that led to the decision to invest in a company where there was nothing in the record to suggest that the venture capital firm had data or documents not available from the company or public sources. *See id.* at *13; *see also Sci. Applications & Research Assocs. (SARA), Inc. v. Zipline Int'l, Inc.*, Case No. 22-cv-4480-JSC, 2024 U.S. Dist. LEXIS 151856, at *12 (N.D. Cal. Aug. 23, 2024). In so finding, such courts have found that these internal analyses were more akin to expert reports, analyzing the same information that an expert witness would consider in determining damages, and thus not relevant to a claim or defense. *Visto Corp.*, 2007 U.S. Dist. LEXIS 8481, at *13; *SARA*, 2024 U.S. Dist. LEXIS 151856, at *13-14.

In *Viacom International, Inc. v. YouTube, Inc.*, however, the district court permitted discovery from venture capital firms that had a "close relationship" with the defendants. No. C 08-80129 SI, 2008 U.S. Dist. LEXIS 79777, at *13 (N.D. Cal. Aug. 18, 2008). There, the plaintiffs sought documents from three venture capital firms who were involved with YouTube in its initial rounds of investment and eventual acquisition by Google. *Id.* at *4. In addition to their financial investments, the venture capital firms had varying levels of involvement in YouTube,

3

1  with the first firm having delegates at YouTube board meetings and directly assisting with the
2  acquisition, the second firm reviewing and approving the acquisition by Google, and the third firm
3  leasing computer servers to YouTube and performing an internal evaluation of shareholder
4  obligations included in the merger agreement in preparation for the acquisition. *Id.* at *5-6. The
5  district court found that internal analyses produced by the venture capital firms could be produced
6  based on their "close relationship with defendants," as they "may have obtained information
7  regarding defendants' intent and knowledge through oral communications, which respondents then
8  incorporated into their internal analyses and communications with potential investors." *Id.* at *13.

9        The Court finds that the instant case is more akin to *Viacom*, such that there is a reasonable
10 basis to believe that a16z's internal documents contain information about Udio based on oral
11 communications. Specifically, Plaintiffs have explained that a16z is not merely an investor in
12 Udio, but that it is a lead investor who has served a key advisory role to Udio. (*See* Pls.' Mot. at
13 1.) For example, one a16z partner sits on Udio's Board of Directors while another serves as Board
14 Observer. (Pls.' Reply at 3.) Additionally, Plaintiffs provide documents showing that a16z
15 ███████████████████████████████████████████████
16 ███████████████████████████████████████████████
17 ███████████████████████████████████████████████
18 ███████████████████████████████████████████████
19 ███████████████████████████████████████████████
20 ███. In short, this is not a case where a16z was a mere passive investor, whose only role was
21 deciding whether or not to invest in Udio. Rather, there is a showing that a16z has done work on
22 behalf of Udio, including on aspects that are directly implicated in this lawsuit such as ███████
23 ████████████. Thus, unlike *Visto* and *SARA*, there is reason to believe that a16z will have
24 documents that are not in Udio's possession, but that nevertheless reflect Udio's knowledge, state
25 of mind, and intent as is relevant to the copyright infringement claims of this case.

26       Additionally, the discovery being sought appears to be relevant to Udio's fair use defense,
27 specifically the first and fourth factors. The first fair use factor is "the purpose and character of
28 the use, including whether such use is of a commercial nature or is for nonprofit educational

4

purposes." 17 U.S.C. § 107(1). This factor "asks whether *and to what extent* the use at issue has a purpose or character different from the original." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 529 (2023) (internal quotation omitted). "A use that shares the purpose of a copyrighted work . . . is more likely to provide the public with a substantial substitute for matter protected by the copyright owner's interests in the original work or derivatives of it, which undermines the goal of copyright." *Id.* at 532-33. Plaintiffs assert that the requested discovery goes to understanding how Udio's business plan is premised on exploiting Plaintiffs' copyrighted works to create an AI product that produces audio files which will compete with the works on which it was trained. (Pls.' Mot. at 5; Pls.' Reply at 7.) a16z, in turn, does not dispute that this is relevant; instead, it argues that such discovery should be sought solely from Udio. (a16z Sur-Reply at 4.) While there is a preference to obtain discovery from parties rather than third parties, as discussed above, there is reason to believe that a16z has unique information on this matter given its involvement in Udio's business.

       The fourth fair use factor is the "effect on the potential market for the copyrighted work," which considers "whether, if the challenged use should become widespread, it would adversely affect the potential market for the copyrighted work by diminishing potential sales, interfering with marketability, or usurping the market." *Sega Enters. v. Accolade, Inc.*, 977 F.2d 1510, 1523 (9th Cir. 1992). Information about Udio's market and its actual or potential impact on the music industry goes to its dilutive effect on the market and is thus relevant. a16z's reliance on *Tremblay v. OpenAI* is not persuasive; there, the plaintiffs sought licensing agreements between two *non-parties*. (a16z Sur-Reply at 6 (citing Case No. 23-cv-3223-AMO (RMI), 2025 U.S. Dist. LEXIS 39970, at *11-12 (N.D. Cal. Mar. 5, 2025)).) Further, the licensing agreements were for news content, whereas the plaintiffs held copyrights for non-news content; thus, it was unclear how the licensing agreements sought would be relevant to determining the market for the plaintiffs' copyrights. *See Tremblay*, 2025 U.S. Dist. LEXIS 39970, at *12. Here, in contrast, Plaintiffs are seeking information about Udio (albeit from a third-party) about Udio's impact on the music industry, *i.e.*, the subject matter of the underlying lawsuit.

       The Court notes that the relevance of the discovery requests to damages appears more

questionable, as use of a16z's internal valuation reports of Udio are similar to the uses rejected in *Visto Corp.* and *SARA*. *See Visto Corp.*, 2007 U.S. Dist. LEXIS 8481, at *13; *SARA*, 2024 U.S. Dist. LEXIS 151856, at *13-14. That said, there is no suggestion that any of the discovery requests are relevant only to damages. Rather, it appears that information about Plaintiffs' sound recordings, Udio's training data, copyright liability, business risks, and efforts to license training data all go to willfulness, while information about the market for Udio's services and its actual or potential impact on the music industry go to fair use. Thus, the Court finds that the requested discovery is relevant.

### B. Undue Burden and Confidentiality

The Court must balance the relevance of the discovery sought with any potential hardship to a16z. With respect to undue burden, "[t]he Ninth Circuit has emphasized that a third party subpoena can be quashed or modified on the grounds that it is overly burdensome only if the third party shows an undue burden with 'specific examples or articulated reasoning.'" *Fallon v. Locke, Liddell & Sapp, LLP*, No. 04-cv-3210-RMW (RS), 2005 U.S. Dist. LEXIS 46987, at *12 (N.D. Cal. Aug. 4, 2005) (quoting *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)). Here, a16z provides a conclusory assertion that a search would "undoubtedly . . . be in excess of 100 hours." (a16z Opp'n at 8.) a16z provides no convincing details in support, nor is it independently obvious to the Court that this estimate is reasonable. Thus, the Court finds that a16z has failed to demonstrate undue burden. *See Fallon*, 2005 U.S. Dist. LEXIS 46987, at *12-13 (finding no undue burden where the third-party failed to provide any supporting affidavits or otherwise make a particularized showing regarding the time and expense of responding to the subpoena); *Dep't of Fair Emp't & Hous. v. Law Sch. Admission Counsel*, No. 12-cv-1830-EMC (KAW), 2013 U.S. Dist. LEXIS 84205, at *8 (N.D. Cal. June 14, 2013) (finding no undue burden where the defendant provided no convincing details regarding the burden of complying with the discovery request).

In the alternative, a16z raises concerns that the subpoena seeks confidential information. (a16z Opp'n at 8.) As Plaintiffs point out, however, there is a protective order in this case. There is no suggestion by a16z in the sur-reply that the protective order is inadequate to ensure that its

6

1 information remains protected.

2     Accordingly, the Court finds that the potential hardship to a16z does not outweigh the
3 relevance of the discovery at issue, and that discovery is warranted.

### IV.   CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' motion to compel, and orders a16z to comply with the amended subpoena requests as stated in the motion to compel. (*See* Pls.' Mot. to Compel at 3:10-16.)

IT IS SO ORDERED.

Dated: September 9, 2025

                                                        */s/ Kandis Westmore*
KANDIS A. WESTMORE
United States Magistrate Judge